IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CRIMINAL NO. 1:18-CR-6 |
| | : |
| v. | : (Judge Conner) |
| | : |
| **EMERSON MILLER,** | : |
| | : |
| **Defendant** | : |

### MEMORANDUM

Defendant Emerson Miller objects to being classified as a career offender under the United States Sentencing Guidelines. He raises an issue of first impression for this circuit. Miller contends that recent amendments to the Controlled Substances Act ("federal CSA"), 21 U.S.C. § 801 *et seq.*, remove his prior state conviction—possession with intent to deliver marijuana—from the purview of the career-offender guideline's definition of "controlled substance offense."

**I.    Factual Background and Procedural History**

A federal grand jury sitting in Harrisburg, Pennsylvania, returned a seven-count indictment against Miller in January 2018. (Doc. 1). The indictment charged Miller with four counts of distribution and possession with intent to distribute unspecified quantities of cocaine base in violation of 21 U.S.C. § 841(a)(1) (Counts 2 through 5), two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) and § 924(e) (Counts 1 and 6), and one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k) (Count 7). (Id.) The government subsequently filed a felony information under 21 U.S.C.

§ 851(a)(1), seeking to enhance Miller's statutory sentencing exposure based upon his prior felony controlled-substance convictions.  (See Doc. 8).

On April 1, 2019, Miller pled guilty to Counts 5, 6, and 7.  (See Doc. 52).  The written plea agreement includes two nonbinding stipulations: first, that Miller is responsible for between 11.2 and 16.8 grams of cocaine and, second, that the serial number on the at-issue firearm was obliterated.  (Doc. 48 ¶ 11).  The agreement also includes a provision wherein the government agrees to recommend a sentence of 188 months' imprisonment, ostensibly on the assumption that Miller would qualify as a career offender.  (See id. ¶ 12).

The presentence report catalogues Miller's three offenses into two separate groups as required under Guidelines Section 3D1.2(c) and (d).  (See Doc. 54 ¶ 17).  The controlled-substance offense (Group 1) has an adjusted offense level of 18.  (Id. ¶ 23).  The firearms offenses (Group 2) receive a base offense level of 24 pursuant to Section 2K2.1(a)(2) (because the report finds that Miller committed these offenses after sustaining at least two prior felony controlled-substance convictions), and a four-level enhancement under Section 2K2.1(b)(4)(B) (because the firearm had an obliterated serial number), resulting in an adjusted offense level of 28.  (Id. ¶¶ 24, 25, 29).  Applying multicount adjustment rules, the combined adjusted offense level for all groups becomes 28.  (See id. ¶ 28).  However, the report also finds that Miller qualifies as a career offender, increasing his combined adjusted offense level to 34.  (Id. ¶ 34).  With a three-level reduction for acceptance of responsibility, (id. ¶¶ 35-36), the report calculates a total offense level of 31, (id. ¶ 37).

The career-offender designation impacts Miller's criminal history category too. Miller has a criminal history score of seven, which equates to a criminal history category of IV. (Id. ¶ 48). But with a career-offender classification, Miller's criminal history category is automatically increased to VI. (Id. ¶ 49). An offense level of 31 and criminal history category of VI produce a Guidelines range of 188 to 235 months' imprisonment.[1] (Id. ¶ 73).

## II.  Discussion

Miller raises two objections to the presentence report, both of which implicate the Guidelines' definition of "controlled substance offense." He first challenges his designation as a career offender for, among other things, having two prior felony convictions for controlled-substance offenses.[2] See U.S.S.G. § 4B1.1(a). And he objects to the enhanced base offense level applied to the firearms group, since that enhancement is also predicated on having two prior felony convictions for controlled-substance offenses. See U.S.S.G. § 2K2.1(a)(2). Both guidelines use

---

[1] By way of comparison, Miller will be facing a substantially lower Guidelines range of 63-78 months if his objections are sustained (eliminating the career-offender enhancement and the elevated base offense level under Section 2K2.1(a)(2)).

[2] Section 4B1.1 classifies a defendant as a "career offender" if "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(a) (U.S. SENTENCING COMM'N 2018) (hereinafter "U.S.S.G."). Only the third element is at issue in Miller's case.

3

the same definition of "controlled substance offense."  See id. § 4B1.2(b); see also id. § 2K2.1 cmt. n.1 (incorporating definition provided by Section 4B1.2(b)).

Although these objections involve several nested issues, our inquiry is, at bottom, a narrow one: does the definition of marijuana under Pennsylvania law sweep more broadly than its federal counterpart?  Miller contends that it does and that, as a result, his 2008 conviction for possession with intent to deliver a controlled substance (marijuana) under 35 PA. STAT. AND CONS. STAT. § 730-113(a)(30) cannot qualify as a predicate "controlled substance offense" under the Guidelines.  Our review of the applicable law reveals Miller to be correct.  Because Congress carved "hemp" out of the federal CSA's definition of marijuana in the 2018 Farm Bill, Pub. L. No. 115-334, § 12619, 132 Stat. 4490, 5018 (2018), and because Pennsylvania law includes no like exclusion, the state and federal definitions of "marihuana" no longer match, and a Pennsylvania conviction for possession with intent to deliver marijuana cannot qualify as a Guidelines controlled-substance offense.

## A.     Divisibility of Section 780-113(a)(30)

Our analysis is initially guided by the categorical approach.  See United States v. Williams, 898 F.3d 323, 333 (3d Cir. 2018) (citing Taylor v. United States, 495 U.S. 575, 588 (1990)).  Under this approach, we compare "the elements of the statute forming the basis of the defendant's conviction with the elements of the [federal] 'generic' crime—i.e., the [federal] offense as commonly understood." United States v. Henderson, 841 F.3d 623, 627 (3d Cir. 2016) (citation omitted).  Our focus is on "the statutory definitions—i.e., the elements" of the offenses at issue, "*not* . . . the particular facts underlying [the defendant's] convictions."  United

4

States v. Chapman, 866 F.3d 129, 133-34 (3d Cir. 2017) (quoting Descamps v. United States, 570 U.S. 254, 261 (2013)).  If, however, the state statute is "divisible"—that is, it provides alternative elements for a conviction and "thereby define[s] multiple crimes"—we must apply the "modified" categorical approach to determine "which alternative formed the basis of the defendant's prior conviction."  Henderson, 841 F.3d at 627 (quoting Mathis v. United States, 579 U.S. ___, 136 S. Ct. 2243, 2249 (2016); Descamps, 570 U.S. at 257).  Only if the elements of the prior conviction match, or are narrower than, the federal crime will the prior offense qualify as a "controlled substance offense" under the career-offender guideline.  United States v. Dahl, 833 F.3d 345, 349 (3d Cir. 2016) (citing Descamps, 570 U.S. at 261).

The Third Circuit addressed Section 780-113(a)(30)'s status as a career-offender predicate just two years ago in United States v. Glass, 904 F.3d 319 (3d Cir. 2018).  Glass, however, confronted a different issue: the defendant argued that the state statute criminalized mere offers to sell while federal law did not, rendering Section 780-113(a)(30) categorically broader than its federal counterpart.  Glass, 904 F.3d at 322.  The question was whether the *conduct* criminalized by the state (*i.e.*, the manner of committing the offense) swept more broadly than the conduct criminalized at the federal level.  Id.  The Glass court determined that it did not and upheld the defendant's Section 780-113(a)(30) convictions as career-offender predicates.  Id. at 324.

The nuanced question raised here is whether the *substance* criminalized by the state is broader than the substance criminalized by the federal government.  And that question must be addressed at a more granular level, since our court of

5

appeals has said time and again that Section 780-113(a)(30) is divisible by drug type, see United States v. Abbott, 748 F.3d 154, 159 (3d Cir. 2014); Henderson, 841 F.3d at 629 n.5, even if it may be indivisible as to "manner of committing the offense," see United States v. Daniels, 915 F.3d 148, 152 n.3 (3d Cir. 2019) (discussing relationship between Abbott and Glass). We must therefore apply the modified categorical approach and look to the available Shepard documents to determine Miller's specific offense of conviction. See Shepard v. United States, 544 U.S. 13, 20, 26 (2005). That review confirms that Miller's 2008 conviction under Section 780-113(a)(30) was for possession with intent to deliver marijuana. (See Doc. 78-1).[3]

### B.   Element-to-Element Comparison

Our next step is to identify the elements of Miller's prior conviction, as it is well settled that "[a] state conviction cannot qualify as a 'controlled substance offense' if its elements are broader than those listed in Section 4B1.2(b)." Glass, 904 F.3d at 321-22 (citing Mathis, 579 U.S. at ___, 136 S. Ct. at 2251). Again, only if the elements of the prior conviction match, or are narrower than, the federal crime can the prior offense qualify as a "controlled substance offense" under the career-offender guideline. Dahl, 833 F.3d at 349. The elements of Miller's 2008 conviction are (1) "possession [(2)] with intent to . . . deliver [(3)] a controlled substance"—that

---

[3] Because Section 780-113(a)(30) is divisible by drug type, we reject Miller's broader argument that a mismatch between the state and federal schedules renders Section 780-113(a)(30)—as a whole—categorically overbroad. We further observe that Miller's presentence report identifies a second predicate controlled-substance conviction: 2010 possession with intent to deliver cocaine base. Miller does not contend that this offense sweeps more broadly than Section 4B1.2(b), so his objections hinge on the 2008 marijuana conviction.

is, marijuana—[(4)] "by a person not registered under" Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act ("Pennsylvania CSA").  See 35 PA. STAT. AND CONS. STAT. §§ 780-104(1)(iv), -113(a)(30).  The only element at issue is the controlled substance: marijuana.

At the time of Miller's offense conduct and conviction, and indeed to the present day, Pennsylvania's CSA defines "marihuana" as follows:

> all forms, species and/or varieties of the genus Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin; but shall not include tetrahydrocannabinols, the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, cake, or the sterilized seed of such plant which is incapable of germination.

35 PA. STAT. AND CONS. STAT. § 780-102(b) (2007); id. (2008); id. (2019).  This definition contains no mention of tetrahydrocannabinol or "THC" concentration.

We then compare this element to the corresponding element in the federal offense.  See Singh v. Attorney Gen., 839 F.3d 273, 284 (3d Cir. 2016).  The federal "offense" here is a "controlled substance offense" as defined by Section 4B1.2(b) of the Guidelines.  That section states,

> the term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

7

U.S.S.G. § 4B1.2(b). Of particular relevance for Miller's case is the final clause: "possession of a *controlled substance* . . . with intent to . . . distribute[] or dispense." Id. (emphasis added). Whether Miller's marijuana conviction qualifies as a controlled-substance offense turns on the meaning of the term "controlled substance" as used in Section 4B1.2(b).

### 1.    *Federal CSA Definition of "Controlled Substance"*

Courts are divided on whether "controlled substance" in Section 4B1.2(b) is governed by the federal CSA schedules.[4] On one side of the split stand the Second, Fifth, Eighth, Ninth, and possibly Tenth Circuits. The Second Circuit has directly held that a "controlled substance" under Section 4B1.2(b) must be one that is contained in the federal CSA's schedules.[5] See United States v. Townsend, 897 F.3d 66, 68, 71 (2d Cir. 2018). In a thoughtful and well-reasoned opinion, the Townsend court emphasized the "need for uniform application" of the federal Guidelines, as well as the presumption that "application of a federal law does not depend on state law unless Congress plainly indicates otherwise." Id. (citing Jerome v. United States, 318 U.S. 101, 104 (1943)). The Fifth, Eighth, and Ninth Circuits have employed similar reasoning in finding that the term "drug trafficking offense" in

---

[4] Miller maintains that "controlled substance" is defined exclusively by the federal CSA's schedules of enumerated substances, a position that the government does not challenge. (See generally Docs. 78-80).

[5] The actual guideline at issue in Townsend was Section 2K2.1(a), see Townsend, 897 F.3d at 68-69, but, as noted above, Application Note 1 to Section 2K2.1 expressly adopts the definition of "controlled substance offense" found in Section 4B1.2(b), see U.S.S.G. § 2K2.1 cmt. n.1.

8

Section 2L1.2—with a definition nearly identical to Section 4B1.2(b)'s "controlled substance offense"—is defined by the federal CSA and its schedules. See United States v. Gomez-Alvarez, 781 F.3d 787, 793 (5th Cir. 2015); United States v. Leal-Vega, 680 F.3d 1160, 1166 (9th Cir. 2012); United States v. Sanchez-Garcia, 642 F.3d 658, 661 (8th Cir. 2011); see also United States v. Walker, 858 F.3d 196, 200 n.4 (4th Cir. 2017) (noting that "drug trafficking offense" under Section 2L1.2 is "substantively identical" to Section 4B1.2(b)). The Tenth Circuit has signaled its agreement with the Ninth Circuit in an unpublished decision. See United States v. Abdeljawad, 794 F. App'x 745, 748 (10th Cir. 2019) (nonprecedential) (quoting Leal-Vega, 680 F.3d at 1167).

On the other side of the divide are the Sixth, Seventh, and Eleventh Circuits, although it appears that only the Seventh Circuit has issued a precedential opinion on the matter. See generally United States v. Ruth, 966 F.3d 642 (7th Cir. 2020) (relying on United States v. Hudson, 618 F.3d 700, 701 (7th Cir. 2010)); United States v. Peraza, 754 F. App'x 908 (11th Cir. 2018) (nonprecedential) (relying on, *inter alia*, United States v. Smith, 775 F.3d 1262 (11th Cir. 2014)); United States v. Sheffey, No. 18-3775, ___ F. App'x ___, 2020 WL 3495944 (6th Cir. June 29, 2020) (nonprecedential); United States v. Smith, 681 F. App'x 483, 488 (6th Cir. 2017) (nonprecedential). The gist of the Seventh Circuit's reasoning in Ruth is that Section 4B1.2(b) does not explicitly cross-reference or import the federal CSA, whereas other definitions in the career-offender guideline and Section 2D1.1 specifically incorporate federal statutes. See Ruth, 966 F.3d at 651-52. Ruth also relies on a prior Seventh Circuit decision which determined that "counterfeit

substance" in Section 4B1.2(b) should be defined by how it "is commonly understood" and should be given "its natural meaning" rather than cabining it "to a particular state's concept of what is meant by that term." Id. at 652 (quoting Hudson, 618 F.3d at 703); see also id. at 654.[6]

We are persuaded by the *ratio decidendi* of the Second, Fifth, Eighth, and Ninth Circuits. We agree that uniformity in federal sentencing is paramount, particularly with respect to application of the career-offender enhancement. Indeed, it is one of the primary goals of the Guidelines. See U.S.S.G. Ch. One, Pt. A(1)(3) (explaining that Congress sought "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders"). The severe consequences of career-offender

---

[6] We assign little weight to the Sixth and Eleventh Circuit's unpublished decisions. The Eleventh Circuit's decision in Peraza was based on that court's determination that binding precedent foreclosed the defendant's career-offender challenge to a particular state predicate. See Peraza, 754 F. App'x at 910. The case relied on by the Peraza court, however, involved a challenge to Section 4B1.2(b)'s lack of a *mens rea* requirement; it did not address the term "controlled substance" or whether that element is defined by the federal CSA's schedules. See Smith, 775 F.3d at 1264, 1268. Nor are the Sixth Circuit's decisions persuasive. In Smith, the panel simply stated, without elaboration or citation, that "there is no requirement that the particular controlled substance underlying a state conviction also be controlled by the federal government." Smith, 681 F. App'x at 689. And Sheffey merely adopts the cursory reasoning in Smith. Sheffey, 2020 WL 3495944, at *6. Notably, the Sheffey panel then drilled down, using the modified categorical approach, to establish the defendant's crime of conviction with respect to the substance at issue. See Sheffey, 2020 WL 3495944, at *6-7. Finding that the defendant's crime of conviction was trafficking heroin, "which is a federally controlled substance," the court determined that the offense qualified as a controlled-substance predicate. Id. at *7. But see United States v. Pittman, 736 F. App'x 551, 553 (6th Cir. 2018) (nonprecedential) (defining "controlled substance" in Section 4B1.2(b) by reference to federal CSA without acknowledging Smith or providing reasoning).

classification should not be contingent on a particular state's decision regarding which substances to control. See Townsend, 897 F.3d at 71; Leal-Vega, 680 F.3d at 1166 (quoting Taylor, 495 U.S. at 589). We likewise concur with Leal-Vega that "controlled substance"—unlike "counterfeit substance"—is a term of art that simply is not susceptible to an ordinary, commonly understood meaning untethered to a statute; rather, whether a substance is in fact "controlled" necessarily depends on the existence of a local, state, or federal law deeming it so. Leal-Vega, 680 F.3d at 1166-67.

We are further influenced by our court of appeals' analysis in Glass dealing with closely related issues. In discussing the defendant's argument concerning Section 780-113(a)(30)'s term "deliver" as defined by Section 780-102(b), the Glass court *sua sponte* identified the federal CSA as the "federal counterpart" to the Pennsylvania CSA for purposes of the career-offender challenge under review. See Glass, 904 F.3d at 322 (citing 21 U.S.C. § 802(8) (defining "deliver")). The panel could have used an ordinary, generic meaning of the term "deliver" when addressing the defendant's argument, but it did not. Instead, the court looked to the federal CSA's definitions to inform whether "deliver" under Pennsylvania law swept more broadly than Section 4B1.2(b)'s language. See id. We see no reason why the federal CSA's definition of "controlled substance," see 21 U.S.C. § 802(6), should not also be the "federal counterpart" that is looked to when determining the meaning of the term "controlled substance" in Section 4B1.2(b).

To be abundantly clear, we hold that, for purposes of career-offender classification, the term "controlled substance" in Section 4B1.2(b) "must refer

11

exclusively to those drugs listed under federal law—that is, the [federal] CSA." Townsend, 897 F.3d at 71.

### 2. *Categorical Comparison of Elements*

Having established that the federal CSA's schedules control, we look to that statute's definition of marijuana for the required categorical element-to-element comparison. Following passage of the 2018 Farm Bill, the federal Schedule I controlled substance of "marihuana" is defined similarly to Pennsylvania's law but explicitly excludes hemp. Section 802(16)(A) of Title 21 defines "marihuana" as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin." 21 U.S.C. § 802(16)(A). Subsection 16(B) then expressly excludes "hemp" and cross-references Section 1639*o*(1) of Title 7 for hemp's definition. Id. § 802(16)(B). Hemp, in turn, is defined as the "plant Cannabis sativa L. and any part of that plant" with a THC "concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639*o*(1).

It is immediately apparent that Pennsylvania's CSA defines marijuana more broadly than its federal counterpart. Put differently, Pennsylvania's CSA—with regard to marijuana offenses—criminalizes more conduct than its federal analogue. Specifically, Pennsylvania criminalizes possession with intent to deliver hemp, that is, Cannabis sativa L. with a THC concentration at or below 0.3 percent; the federal CSA does not. When an element of a state crime sweeps more broadly than an element of the corresponding federal offense, the state crime cannot constitute a

career-offender predicate. Glass, 904 F.3d at 321. Following the 2018 Farm Bill amendments, that is exactly what Pennsylvania's possession-with-intent-to-deliver-marijuana law does. So it cannot constitute a controlled-substance predicate under Section 4B1.2(b).

The government's arguments to the contrary are unpersuasive. The government first contends that, because the federal CSA's definition of marijuana was not amended until 2018, this definition has "no bearing" on whether Miller's 2008 conviction qualifies as a career-offender predicate. (See Doc. 79 at 6). According to the government, because "[c]ourts begin their 'categorical analysis by examining the text of the statute *at the time of conviction*,'" (id. (citing Ramos, 892 F.3d at 607; United States v. Steed, 879 F.3d 440, 448-49 (1st Cir. 2018))),[7] both the potential state predicate offense *and* the corresponding federal offense must be viewed at the time of the prior state conviction—here, 2008.

The government is only half right. "Under the categorical approach, we look to the elements of the *state statute* as it existed at the time of the prior conviction." Dahl, 833 F.3d at 354 (emphasis added) (citing Taylor, 495 U.S. at 598). The portions of both Ramos and Steed referenced by the government merely provide examples of this well-settled rule in action. See Ramos, 892 F.3d at 607 (discussing elements of defendant's prior 1998 conviction under 18 PA. CONS. STAT. § 2702 as they existed at time of state guilty plea); Steed, 879 F.3d at 448-49 (discussing defendant's prior

---

[7] We are unsure where the government draws its quotation on page 6 of its briefing. That quotation does not appear in Ramos or Steed, or in any other case that we could find.

13

2000 conviction under N.Y. PENAL LAW § 160.10(2)(a) and interpretive case law existing at the time of that conviction).

When applying the categorical approach, however, courts look to the federal offense as it presently exists. This makes intuitive sense, because the categorical approach is predominantly used to determine present-day implications of prior convictions. See, e.g., 18 U.S.C. § 924(e); 21 U.S.C. §§ 841, 851; U.S.S.G. §§ 2L1.2, 2K2.1, 4B1.1, 4B1.5; see also 8 U.S.C. § 1227(a)(2)(A)(iii), (B)(i) (deportation consequences of prior convictions). When the federal "offense" is provided by the sentencing Guidelines, like Section 4B1.2(b), we need look no further than Chapter One of the Guidelines. Section 1B1.11 mandates that courts "use the Guidelines Manual in effect on the date that the defendant is sentenced" unless it would raise *ex post facto* clause concerns. See U.S.S.G. § 1B1.11(a), (b)(1). The government has provided no reason (or authority) for utilizing 2008 federal schedules to determine career-offender applicability at a sentencing in 2020 that necessarily relies on the most current version of the Guidelines. Hence, we are unpersuaded.

The government next argues that Pennsylvania "carved out an exemption for hemp cultivation and processing in 2016," so the mismatch in controlled-substance schedules has been rectified. (Doc. 79 at 8). In 2016, Pennsylvania enacted the Industrial Hemp Research Act of July 20, 2016, P.L. 822, No. 92, which legalized certain hemp cultivation and processing by amending Pennsylvania's Agriculture Code—Title 3 of Pennsylvania's Consolidated Statutes. See generally 3 PA. CONS.

14

STAT. § 701 *et seq.*[8]  This 2016 amendment provides that agriculture practices related to licensed hemp production under Title 3 "shall not be in violation of the laws of the Commonwealth including" the Pennsylvania CSA.  Id. § 706(1).  According to the government, this amendment makes Miller's 2008 marijuana conviction "not overbroad."  (Doc. 79 at 13).

This argument fails for at least two reasons.  First, even if a legislative amendment in 2016 decriminalized hemp under Pennsylvania law, we must look to the state's law as it existed at the time of Miller's prior conviction.  Dahl, 833 F.3d at 354.  Obviously, in 2008, the 2016 Industrial Hemp Research Act did not exist, and we are unaware of any other statutory exemption for hemp at that time.

Second, although the Industrial Hemp Research Act provides protections for certain regulated hemp production, it did not remove hemp from the Pennsylvania CSA's schedule of controlled substances or otherwise decriminalize its possession or distribution.  The Act simply states that "activity conducted *in compliance with this chapter* shall not be in violation of the laws of the Commonwealth," including the Pennsylvania CSA.  3 PA. CONS. STAT. § 706 (emphasis added); cf. Commonwealth v. Jezzi, 208 A.3d 1105, 1115 (Pa. Super. Ct. 2019) (noting that Commonwealth's statutory amendments permitting medicinal marijuana did not remove marijuana from Pennsylvania CSA schedules).  The 2016 amendment merely permits a limited set of licensed cultivators to grow and possess an

---

[8] The Industrial Hemp Research Act, similar to federal law, defines "hemp," as "[t]he plant Cannabis sativa L. and any part of the plant, whether growing or not, with a delta-9 tetrahydrocannabinol [THC] concentration of not more than 0.3% on a dry-weight basis."  3 PA. CONS. STAT. § 702.

15

otherwise controlled substance without fear of prosecution under the Pennsylvania CSA.

The government's final argument is that there is "no evidence that an individual would be convicted under" Section 780-113(a)(30) "for distribution of hemp." (Doc. 79 at 13). The government quotes <u>Gonzalez v. Duenas-Alvarez</u>, 549 U.S. 183 (2007), for the proposition that to "find that a state statute creates a crime outside the generic definition . . . requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." (<u>Id.</u> (quoting <u>Gonzalez</u>, 549 U.S. at 193)). According to the government, "the state of Pennsylvania would never prosecute an individual under [Section] 780-113 for an offense involving hemp." (Doc. 79 at 13-14). If at all, the government maintains, a person would be prosecuted under the enforcement provisions of the Industrial Hemp Research Act, 3 PA. CONS. STAT. § 707.

We reject this speculative argument for two reasons. First, Miller was convicted in 2008, eight years before passage of the Industrial Hemp Research Act. Second, the Third Circuit has rejected the "realistic probability" inquiry when the elements of the prior state conviction plainly do not match the corresponding federal offense. See <u>Salmoran v. Attorney Gen.</u>, 909 F.3d 73, 81-82 (3d Cir. 2018); <u>Singh</u>, 839 F.3d at 286 & n.10. Our court of appeals does not require defendants to identify cases of actual prosecution when the state statute "expressly authorizes the state government to enforce broader conduct." <u>Salmoran</u>, 909 F.3d at 82. In such situations, "no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic

16

definition of the crime." Id. (quoting United States v. Grisel, 488 F.3d 844, 850 (9th Cir. 2007), abrogated on other grounds, United States v. Stitt, 586 U.S. ___, 139 S. Ct. 399 (2018)); see also Jean-Louis v. Attorney Gen., 582 F.3d 462, 481 (3d Cir. 2009).

Assuming *arguendo* a "realistic probability" of prosecution is required, we are satisfied that it exists. As Miller correctly observes, what mattered at the time of his conviction, and likely still matters for Pennsylvania's CSA today, is that the substance seized by law enforcement tests positive for "marihuana," a Schedule I controlled substance. See Commonwealth v. Smith, No. 247 MDA 2016, 2016 WL 5266633, at *1 (Pa. Super. Ct. Sept. 22, 2016) (nonprecedential) (explaining that the "marijuana was field tested and confirmed to contain THC, a Schedule I controlled substance"); (see, e.g., Doc. 80-1 (finding that "vegetable matter" examined by laboratory "weighed 2.45 g[rams] and contained marihuana, (Schedule I)")). The percentage of THC in marijuana is irrelevant under the Pennsylvania CSA; prosecution can follow if the substance is identified as "marihuana" through detection of the presence of any level of THC. See 35 PA. STAT. AND CONS. STAT. §§ 780-102(b), -104(1)(iv), -113(a)(30); Smith, 2016 WL 5266633, at *1.[9]

---

[9] See also Terrie Morgan-Besecker, *Lack of better THC test cause for concern*, CITIZENS' VOICE (July 27, 2019), https://www.citizensvoice.com/news/lack-of-better-thc-test-cause-for-concern/article_4caff087-a8aa-5d8f-afec-8c88961a6da6.html (noting that, according to Pennsylvania State Police Trooper Ryan Tarkowski, the State Police crime laboratory "tests [marijuana] only for the presence of THC, not the level"); Tim Prudente, *How Congress passed a farm bill and left Maryland police labs unable to test for marijuana*, BALTIMORE SUN (June 24, 2020, 6:00 AM), https://www.baltimoresun.com/news/crime/bs-pr-md-cr-police-marijuana-testing-20200624-7ccylm6cm5gw7f7axrt3ma6tja-story.html (discussing identical testing problems for law enforcement in Maryland).

In sum, the government's counterarguments are unavailing. We are constrained to conclude that Miller's 2008 conviction for possession with intent to deliver marijuana under Section 780-113(a)(30) sweeps more broadly than its federal counterpart and thus cannot qualify as a "controlled substance offense" under Section 4B1.2(b).

### III. Conclusion

For these reasons, the court will sustain Miller's objection to the presentence report's career-offender designation. Miller has, at most, one controlled-substance predicate and therefore cannot be classified as a career offender. We will also sustain his related objection to utilization of Section 2K2.1(a)(2) to establish his base offense level because he does not have two qualifying prior controlled-substance convictions. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   August 19, 2020